**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| TWIST PARTNERS, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AW-06-0579 |
| | * | |
| HANGER ORTHOPEDIC GROUP, INC., | * | |
| *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

<u>**MEMORANDUM OPINION**</u>

Lead Plaintiffs Les Bronte, Twist Partners, LLP, Ed and Aileen Stiehle, Thomas Pyles, and Joe Campagnuolo, Jr. (collectively, "Plaintiffs") brought this securities fraud class action under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Hanger Orthopedic Group, Inc. ("Hanger" or the "Company"), its Chief Executive Officer ("CEO") and Chairman of the Board, Ivan R. Sabel ("Sabel"), its Chief Financial Officer ("CFO") and Executive Vice President, George E. McHenry ("McHenry"), and its President and Chief Operating Officer ("COO"), Thomas F. Kirk ("Kirk") (collectively, "Defendants"). Currently pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Consolidated Amended Class Action Complaint [76]. Plaintiffs contest this motion. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. On February 21, 2007, the Court held a hearing concerning the motion and heard from all the parties. Having considered the arguments of Plaintiffs and Defendants, this Court will grant Defendants' motion to dismiss for the reasons set forth more fully below.

**FACTUAL AND PROCEDURAL BACKGROUND**

1

Plaintiffs allege that between March 13, 2002 through September 15, 2004 (the "Class Period"), Hanger, a provider of orthotics and prosthetic services, engaged in billing fraud and issued false and misleading financial statements.  On June 14, 2004, a television news report on WNBC in New York, aired an investigative report, based on information from an employee of Hanger's West Hampstead facility, describing certain improper billing practices there.  On June 18, 2004, following the WNBC report, Hanger was investigated by the U.S. Attorney's Office for the Eastern District of New York and the Securities and Exchange Commission ("SEC").  Subsequently, on June 22, 2004, Plaintiff Twist Partners filed class action complaints accusing Defendants of securities fraud.  On February 15, 2005, Plaintiffs filed a Consolidated Amended Complaint in the Eastern District of New York, where five separate securities class actions against Hanger and certain of its executives had been consolidated.

On March 2, 2006, the United States District Court for the Eastern District of New York granted Defendants' motion to transfer these cases to the United States District Court for the District of Maryland.  On June 12, 2006, Plaintiffs filed their Second Consolidated Amended Class Action Complaint.  Plaintiffs' Second Amended Complaint ("SAC") asserts two claims for relief.  First, Plaintiffs allege that all Defendants violated Section 10(b) of Exchange Act and Securities and Exchange Commission Rule 10b-5.  Second, Plaintiffs allege that Sable, McHenry, and Kirk (collectively, the "Individual Defendants") are separately liable as a "controlling person" under Section 20(a) of the Exchange Act.  Currently pending is Defendants' Motion to Dismiss Plaintiffs' SAC for failure to state a claim for relief under Sections 10(b) and 20(a).  Plaintiffs oppose the motion.  The motion is ripe, and the Court now issues this opinion.

## STANDARD OF REVIEW

*A.  Pleading Requirement of Rules 12(b)(6), 9(b) and the PSLRA for Claims of Securities Fraud*

To state a claim for relief under § 10(b) and Rule 10b-5, Plaintiffs must sufficiently allege that (1) Defendants made a false statement or omission of material fact (2) with scienter (3) upon which Plaintiffs justifiably relied (4) that proximately caused Plaintiffs' damages. *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 613 (4th Cir. 1999) (citing *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 208 (4th Cir. 1994)). Because § 10(b) claims are fraud claims, the plaintiff must also satisfy the pleading requirements imposed by Fed. R. Civ. P. 9(b). *In re Medimmune, Inc. Securities Litig.*, 873 F. Supp. 953, 960 (D. Md. 1995). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Particularity of pleading is required with regard to the time, place, speaker, and contents of the allegedly false statement, as well as the manner in which the statements are false and the specific facts raising an inference of fraud. *Medimmune*, 873 F. Supp. at 960. In ruling on a motion to dismiss for a securities class action, a court may consider "public documents quoted by, relied upon, incorporated by reference in, or otherwise integral to the complaint, and such reliance does not convert such a motion into one for summary judgment." *In re Spire Comm'ns*, 127 F. Supp. 2d 734, 737 (D. Md. 2001) (citing *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 623 n.4 (E.D. Va. 2000)).

The Private Securities Litigation Reform Act ("PSLRA") imposes additional pleading requirements on plaintiffs in securities fraud actions. Most notably, the PSLRA has heightened the requirements of Rule 9(b) for pleading scienter, which requires malice, intent, knowledge, and other

conditions of mind that may be averred generally.[1]  Under the PSLRA, however, a complaint must,

"with respect to each act or omission alleged to violate this chapter, state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.

§ 78u-4(b)(2).  The Fourth Circuit has held that scienter under the PSLRA may be alleged by

"pleading not only intentional misconduct, but also recklessness," *Ottmann v. Hanger Orthopedic

Group, Inc*., 353 F.3d 338, 344 (4th Cir. 2003), and has defined recklessness as "an act so highly

unreasonable and such an extreme departure from the standard of ordinary care as to present a

danger of misleading the plaintiff to the extent that the danger was either known to the defendant

or so obvious that the defendant must have been aware of it."  *Id.* at 343 (quoting *Phillips*, 190 F.3d

at 621).  Moreover, in evaluating scienter allegations, the Fourth Circuit applies:

> a flexible, case-specific analysis .... [C]ourts should not restrict their
> scienter inquiry by focusing on specific categories of facts, such as
> those relating to motive and opportunity, but instead should examine
> all of the allegations in each case to determine whether they
> collectively establish a strong inference of scienter. And, while
> particular facts demonstrating a motive and opportunity to commit
> fraud (or lack of such facts) may be relevant to the scienter inquiry,
> the weight accorded to those facts should depend on the
> circumstances of each case.

*Ottmann*, 353 F.3d at 345-46.

In sum, to survive a motion to dismiss, plaintiffs must successfully plead with particularity

facts specific to each defendant that create a strong inference that the defendant acted knowingly or

recklessly in making material misrepresentations or omissions.  *See In re Royal Ahold N.V.

Securities & ERISA Litig.*, 351 F. Supp. 2d 334, 369 (D. Md. 2004).  They must also adequately

---

[1] Scienter is a "mental state embracing an intent to deceive, manipulate or defraud."
*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1979).

4

allege "loss causation," i.e., a causal connection between the material misrepresentation and the plaintiffs' economic loss.  *See Dura Pharms.*, 544 U.S. 336, 340; *Keeney v. Larkin*, 306 F. Supp. 2d 522, 541 (D. Md. 2003) (finding that the plaintiff pled no facts suggesting that the delayed disclosure of the allegedly false and misleading omission was a proximate cause of his economic harm).

*B.  Section 20(a) Controlling Person Liability*

To state a claim for controlling person liability under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), Plaintiffs must allege:

> a primary violation by the controlled person and control of the primary violator by the targeted defendant, and ... that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated by the controlled person. Control over a primary violator may be established by showing that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (citations omitted); *see In re Cryomedical Sciences, Inc. Sec. Litig.*, 884 F. Supp. 1001, 1012 (D. Md. 1995).  Of course, if Plaintiffs fail to state a claim for a primary violation of § 10(b) and Rule 10b-5, they likewise fail to state a claim against the Individual Defendants as controlling persons.  *Id.* at 1011-12 (citing *Malone v. Microdyne Corp.*, 824 F. Supp. 65, 66 n. 1 (E.D. Va. 1993), *rev'd on other grounds*, 26 F.3d 471 (4th Cir.1994)).

## ANALYSIS

In 1995, Congress enacted the PSLRA, the purpose of which was to remedy perceived abuse in securities class action litigation.  *In re E. Spire Communications, Inc., Secs. Litig.*, 231 F.R.D. 207, 210 (D. Md. 2000) (citations omitted).  In *In re Manugistics Group, Inc., Secs. Litig.*, this Court found that in enacting the PSLRA:

Congress clearly intended to cut back the ease with which shareholders, through federal class action suits, could hold corporations and their officers at legal swordpoint, with resultant settlements netting millions for plaintiffs' lawyers, but pennies for their clients. The means Congress chose to achieve the goal was to tighten up pleading and practice in such suits, including the establishment of lead counsel procedures, and, as relevant here, heightened standards of claim pleading, above and beyond the simple factual statement otherwise required by Civil Rule 8, and even more specific allegations of fraud required to be pleaded under Rule 9. It also bears noting that, even before PSLRA, the Court of Appeals for this Circuit had begun to impose substantial pleading requirements on plaintiffs in class action securities cases, sustaining the dismissals of a number of such suits as insufficiently pleading the misleading conduct necessary as a predicate for such actions under extant law.

*In re Manugistics Group, Inc., Secs. Litig.*, 1999 WL 1209509 *1 (D. Md. 1999) (citations omitted).

In their motion to dismiss, Defendants allege that Plaintiffs have failed to state a claim for relief under Section 10(b) and 20(a) of the Exchange Act. Defendants rely on several District of Maryland class action securities cases in which this Court granted defendants' motions to dismiss under the rigorous standards of Rule 9(b) and the PSLRA.[2] The Court, in applying the heightened pleadings standard, believes that Plaintiffs, to sufficiently state a claim for relief pursuant to the Exchange Act, must allege with particularity that Defendants made false or misleading statements or omissions of fact and knew or should have known of any improper billing practices. Here, Plaintiffs have failed to specify any false or misleading statement, omission, fact, or practice as to

---

[2] *See Acterna Corp.*, 378 F. Supp. 2d 561 (D. Md. 2005) (Chasanow, J.); *In re Visual Networks, Inc. Sec. Litig.*, 217 F. Supp. 2d 662 (D. Md. 2002) (Chasanow, J.); *In re Criimi Mae, Inc. Sec. Litig.*, 94 F. Supp. 2d 652 (D. Md. 2000) (Chasanow, J.); *Keeney v. Larkin*, 306 F. Supp. 2d 522 (D. Md. 2003) (Davis, J.); *In re USEC Sec. Litig.*, 190 F. Supp. 2d 808 (D. Md. 2002) (Harvey, J.); *In re E. Spire Communications, Inc. Sec. Litig.*, 127 F. Supp. 2d 734 (D. Md. 2001) (Harvey, J.); *Frederick Ian Fischbein PC v. Marsh & McLennan Companies, Inc.*, 2006 WL 734483 (D. Md. Feb. 27, 2006) (Motz, J.); *In re Humphrey Hospitality Trust, Inc. Sec. Litig.*, 219 F. Supp. 2d 675 (D. Md. 2002) (Nickerson, J.).

any of the Defendants.

Plaintiffs allege that practitioners and other employees at the West Hempstead facility forged prescriptions, certificates of medical necessity, and other insurance-related documentation, in addition to improperly submitting billing codes for more expensive products than those actually provided, back-dating insurance billing codes to insurers for products that were more expensive than the products actually provided to patients, back-dating insurance billing documents with phony dates that were required to be dated only by the patients, adding on items that were never prescribed by the referring physician, billing insurers for items and services that were not actually provided to patients, and fabricating false diagnoses for patients to justify a product or service that Hanger billed to insurers.  (Comp. ¶ 55).  Here, although Plaintiffs' Complaint adequately specifies the statements alleged to have been misleading and the reasons why they were misleading, the facts alleged still fail to support a reasonable belief that the statements are in fact misleading, and therefore fail to satisfy the PSLRA and Rule 12(b)(6)'s requirements that the complaint shall state with particularity sufficient facts on which a reasonable belief can be formed.  *See Teacher's Retirement System of Louisiana, et. al. V. Fred Neal Hunter, et. al.* --- F.3d --- (4th Cir. 2007).

In addition, Plaintiffs claim that a former senior office administrator, who was employed in Hanger's Baltimore, MD, Towson, MD, and Wilmington, DE offices witnessed a pattern of non-compliance, and alerted Hanger's corporate headquarters to the non-compliance.  (Comp. ¶ 61). Plaintiffs further allege that a former Hanger area administrative manager witnessed rampant billing fraud in several offices in the mid-Atlantic region and reported this information to Hanger's Compliance Hotline.  (Comp. ¶ 61).  Plaintiffs also assert that an office administrator at Hanger's Brooklyn facility would routinely cut and paste the signatures of patients and physicians from other

documents onto the documents that needed signatures. (Comp. ¶ 61). Consequently, Plaintiffs note that the Brooklyn facility was, ironically, named "Most Improved Office" with respect to compliance. (Comp. ¶ 61). Plaintiffs also allege that former Hanger employees were aware that the facility was imputing billing codes that did not reflect the actual services provided to patients and would pre-bill for products not yet delivered to patients in order to fulfill sales quotas, even though this practice was against regulations. (Comp. ¶ 61).

Furthermore, at the hearing, Plaintiffs indicated that "the Company conducted audits of several of the facilities, including the West Hempstead facility, and those audits showed that the Company knew that the fraud -- or was reckless in not knowing that this billing fraud was occurring at the West Hempstead facility and at several other facilities." (Motions Hr'g Tr. 21, Feb. 21, 2007). Plaintiffs maintain that "[r]ather than doing anything substantial about that fraud, what the company did was simply order[] a second audit of the same facility, which was, in effect, a sham audit." (Motions Hr'g Tr. 21, Feb. 21, 2007). Plaintiffs also claim that another employee "alerted headquarters to the fraud by calling the company's compliance hotline ... with respect to fraud in offices in Bethesda, Lynchburg, Baltimore, and Delaware. So, that fact alone shows that there is a link between corporate and the facilities that were engaging in the fraud and that there was knowledge that the fraud was occurring." (Motions Hr'g Tr. 23, Feb. 21, 2007). However, Plaintiffs allegations of eyewitness accounts, whistle blowers, audits with failing scores, sham audits, alerts to headquarters, misrepresentations, omissions in reports, the policies implemented, and the revenue targets and bonuses, all of which taken together, are still insufficient and fails to satisfy the heightened requirements for a securities claim.

Plaintiffs allege that 14 out of 630 facilities were engaged in widespread fraud, yet these

allegations cannot support an inference of scienter inasmuch as the Complaint does not offer any fact or even speculation linking any of these reports to any of the named Defendants.  Plaintiffs have merely alleged that certain lower level individuals, namely two compliance auditors and a regional manager, might have been familiar with these documents or were carbon-copied on e-mails. Therefore, Plaintiffs argue, the Company was aware of problems local to the West Hempstead Office.  However, at best, this infers that these matters were isolated incidents of a few plants and not indicative of general motive or how the Company operates as a whole.  While, Plaintiffs make these averments in their Complaint, they fail to clearly set forth cognizable allegations and claims with respect to each of the Defendants.  These assertions, without more particularized facts to show what each of the Defendants knew, and how their knowledge is linked to particular false or misleading statements, fail to meet the heightened pleading requirements of the PSLRA.  *See* 15 U.S.C. § 78u-4(b)(1).

Moreover, assuming Plaintiffs have properly asserted that Hanger employees were involved with improper billing practices, which arguably were fraudulent or simply accounting errors, Plaintiffs have still failed to assert and particularize how these practices were fraudulent acts imputable to the named Defendants.  Plaintiffs endeavor to show that there was a motive to commit the fraud by attempting to impute knowledge to the Individual Defendants based upon their executive positions.  However, simply furnishing information of instances of alleged misconduct involving low level employees, branch managers, area managers, and regional managers, as alleged here, is plainly not enough to show that the Individual Defendants were presumably entangled and liable for the former's statements, actions, and omissions.  *Raab v. General Physics Corp.,* 4 F.3d 286 (4th Cir. 1993).  Plaintiffs have failed to allege particularized facts that show that the Individual

Defendants had actual knowledge that employees from Hanger's facilities engaged in improper billing practices.

Under Fourth Circuit law, "[i]n order to demonstrate motive, a plaintiff must show 'concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" *Phillips*, 190 F.3d at 621 ( *quoting Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)). Often, plaintiffs demonstrate motive by showing that defendants sold their stock in the company at suspicious times. *See In re CIENA*, 99 F. Supp. 2d at 663; *In re E. Spire Communications, Inc. Sec. Litig.*, 127 F. Supp. 2d 734, 742 (D. Md. 2001). Here, Plaintiffs rest their allegations of motive on the fact that Defendants McHenry, Sable, and Kirk sold, respectively, 23.4%, 4.2%, and 0% of their holdings in the Company during the Class Period. The Court finds the evidence insufficient for several reasons. First, Kirk did not sell *any* stock during the Class Period. Courts have found that where some defendants did not profit from alleged fraud, any inference of scienter is negated as to all the defendants. *See, e.g., In re CIENA*, 99 F. Supp. 2d at 663; *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Companies*, 75 F.3d 801, 814 (2d Cir. 1996) (complaint did not plead strong inference of scienter where some defendants did not sell stock). Furthermore, McHenry and Sabel's sales were relatively small, as compared to other defendants in similar cases whose sales were found to be such small percentages of their holdings as not to be suspicious. *See, In re CIENNA*, 99 F. Supp. 2d at 663 (27.7% of holdings); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 987 (9th Cir. 1999) (7.7% of holdings); *In re Advanta*, 180 F.3d at 540 (5% and 7% of holdings).

In *Phillips*, the Fourth Circuit made clear that these types of allegations, without more, are insufficient to create a strong inference of scienter:

Allegations that "merely charge that executives aim to prolong the benefits they hold" are, standing alone, insufficient to demonstrate the necessary strong inference of scienter. For this reason assertions that a corporate officer or director committed fraud in order to retain an executive position, or retain such a position with the merged company, simply do not, in themselves, adequately plead motive. Similarly insufficient are allegations that corporate officers "were motivated to defraud the public because an inflated stock price would increase their compensation." To support a claim of motive based on the benefit a defendant derives from an increase in the value of his holdings, a plaintiff must demonstrate some sale of "personally-held stock" or "insider trading" by the defendant.

*Phillips*, 190 F.3d at 622 (citations omitted). Plaintiffs have not pled any significant facts regarding Defendants' trading activities. Their general allegations of motive are precisely the kind the *Phillips* court found to be insufficient. Plaintiffs have therefore failed to adequately allege facts that raise a strong inference that Defendants had a motive to commit fraud.

"Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Shields*, 25 F.3d at 1130. There can be no question that Defendants, given their positions of power and authority, have the opportunity to commit fraudulent acts. *See Phillips*, 190 F.3d at 621 (finding that Chairman and CEO of company "undeniably" had the opportunity to cause an artificial depression in the price of the company's stock). Plaintiffs, however, have not pled sufficient facts regarding Defendants' motives to commit fraud. The Exchange Act makes it *Plaintiffs*' burden to advance at the pleading stage *some* reason to believe that the individuals' stock trades were unusual or suspicious in their timing. Here, Plaintiffs offer nothing more than the fact that two Individual Defendants traded a portion of their shares at some time during the two and a half year Class Period. This by itself is not sufficient to plead actionable motive.

Finally, insofar as liability is predicated on an August 16, 2004, press release issued by the Company, the Complaint must fail because the Company was under no duty to forecast future

performance.  Plaintiffs argue that "[i]f the Company [knew] the billing fraud is occurring and

they're not in compliance with regulations, they shouldn't be saying that they are." (Motions Hr'g

Tr. 25, Feb. 21, 2007).  However, assuming that the Defendants made certain misrepresentations,

Plaintiffs fail to allege what obligations and what duties the Defendants breached.  At the hearing,

the Court asked the Plaintiffs "[w]ho [from headquarters] instructed these facilities to conceal or

continue the practices?"  (Motions Hr'g Tr. 28, Feb. 21, 2007).  Plaintiffs replied that it was the

"headquarters" of the company and that "[w]e have not alleged which person at the headquarters of

the company, but that is based on the account of somebody -- of a former employee of the company

who worked at the facility and who said the headquarters instructed the facility to keep the books

open." (Motions Hr'g Tr. 28, Feb. 21, 2007).  Other than a bare conclusion that the "Corporate

Headquarters" knew the press release was misleading, Plaintiffs have failed to support with specific

facts, the required averment of actual knowledge imposed by the PSLRA in 15 U.S.C. § 78u-5(c)(B).

Moreover, to the extent that liability used to be imposed for a forward-looking statement,

such is no longer the case where, as here, Courts have found that "projections of future performance

not worded as guarantees are generally not actionable under securities law." *Raab v. Gen. Physics

Corp.*, F.3d.286, 290 (4th Cir. 1993).  The *Raab* Court explained the reasoning underlying this

principle:

> Predictions of future growth stand on a different footing, however,
> because they will almost always prove to be wrong in hindsight.  If
> a company predicts twenty-five percent growth, that is simply the
> company's best guess as to how the future will play out.  As a
> statistical matter, twenty percent and thirty percent growth are both
> nearly as likely as twenty-five.  If growth proves less than predicted,
> buyers will sue; if growth proves-greater, sellers will sue.  Imposing
> liability would put companies in a whipsaw, with lawsuit almost a
> certainty. Such liability would deter companies from discussing their
> prospects, and the securities market would be deprived of the

> information those predictions offer.  We believe this is contrary to the
> goal of full disclosure underlying the securities law, and we decline
> to endorse it.

*Id.* at 290.  In general, forward-looking statements are therefore not actionable.  The Court believes

Defendants' report, that the Company was making every effort to comply with federal regulations

and laws, constitutes a reasonable statement and devoid of intentional misrepresentation.  In sum,

inasmuch as their allegations are too speculative and generic and lack any linkage to the named

Defendants, Plaintiffs have failed to particularly assert sufficient fraud necessary to overcome a

motion to dismiss.

Furthermore, Plaintiffs fail to demonstrate a direct relationship between their losses and the

alleged misrepresentations and have failed, therefore, to establish the required element of loss

causation.  In order to state a claim under Section 10(b), "the plaintiff must show both 'loss

causation-that the misrepresentations or omissions caused the economic harm-and transaction

causation-that the violations in question caused the [plaintiff] to engage in the transaction in

question.'" *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 360 (4th Cir. 1996) (*quoting Bennett v.

United States Trust Co.*, 770 F.2d 308, 313 (2d Cir. 1985)).

Loss causation simply "is the causal link between the alleged misconduct and the economic

harm ultimately suffered by the plaintiff." *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group.,

Inc.* 343 F.3d 189, 197 (2d Cir. 2003); *see also Miller v. Asensio & Co.*, 364 F.3d 223, 232 (4th Cir.

2004).  All that a plaintiff is required to allege is "that the act or omission of the defendant ... caused

the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4) (2005).  Plaintiffs

must properly plead loss causation, that Defendants' share price fell significantly after the truth

became known, and not just that Plaintiffs were harmed when they purchased Defendants' shares

at an inflated price.  Here, Plaintiffs have not met this burden.  They have failed to specifically allege the nature and extent of any harm sustained.  As a result, Plaintiffs' allegations of loss are unclear, speculative, indirect, and unsupported by specific facts.  Even if Plaintiffs could make out fraud, they have failed to make out causation.

Finally, while the parties continue to dispute whether this action was a strike suit spawned immediately by a local news report, the Court will simply acknowledge that Plaintiffs have had two and a half years and three opportunities to tweak their Complaint and yet, still fail to adequately set forth a claim sufficient to meet the standard of pleadings for securities cases.  Plaintiffs' allegations require the Court to make conclusions that are speculative and would compel the Court to make huge leaps, which the Court cannot and will not make in the absence of particularized facts. Because the attempt to plead a cognizable claim under the PSLRA was Plaintiffs' third bite at the apple, the Court does not believe Plaintiffs can cure their deficiencies and will deny Plaintiffs another opportunity to amend their Complaint.  In sum, the Court dismisses Plaintiffs' claim for relief under Section 10(b) and 20(a) of the Exchange Act for failing to plead fraud with particularity and to plead facts supporting a strong inference that the Defendants acted with scienter. Furthermore, Plaintiffs have not alleged any loss causation as they have failed to demonstrate a causal link between any substantial losses from which they have suffered.

Plaintiffs also seek recovery from the Individual Defendants pursuant to § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).  Plaintiffs' failure to state a claim for primary securities fraud violation precludes a finding of a control person liability.  *In re Cryomedical Sciences, Inc. Securities Litigation*, 884 F. Supp. 1001, 1011 (D. Md. 1995).  Accordingly, the Court will dismiss Plaintiffs' claim for violation of § 20(a) of the Exchange Act.

14

**CONCLUSION**

For all of the aforementioned reasons, the Court will GRANT Defendants' motion to dismiss.

An Order consistent with this Opinion will follow.

Date:   <u>March 16, 2007</u>                                      <u>                    /s/                    </u>
                                                                  Alexander Williams, Jr.
                                                                  United States District Court Judge